IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

CORNELIUS ACKLIN                                                                                    PETITIONER
REG. #20518-001

V.                                           NO.  2:05CV00245 GH/JWC

LINDA SANDERS, Warden,                                                                       RESPONDENT
FCI, Forrest City, AR

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge George Howard, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original,

of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

Cornelius Acklin, an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the policy of the Bureau of Prisons (BOP) regarding when a federal prisoner is eligible for transfer to a community corrections center (CCC) (docket entry #1). Respondent has filed a response (docket entry #4), and Petitioner has replied (docket entries #5, #6). For the reasons that follow, the petition should be GRANTED.

## I.
## Background

Petitioner states that he is serving a twenty-four-month sentence of imprisonment imposed on October 20, 2004, by the United States District Court, Northern District of Alabama. He says the BOP has informed him that he is eligible to spend less than sixty days at the end of his sentence in a CCC,[1] with a tentative CCC placement date of June

---

[1] CCCs are BOP contract facilities, commonly referred to as halfway houses, and they "provide suitable residence, structured programs, job placement, and counseling, while the inmates' activities are closely monitored." BOP Program Statement 7310.04 ¶ 7(a) (Dec. 16, 1998) (accessible at www.bop.gov/policy/progstat/ 7310_004.pdf).

22, 2006. Petitioner says he has requested that he be permitted to spend at least the last six months of his sentence in a CCC, which has been denied pursuant to current BOP policy. He argues that the BOP's interpretation of the applicable statutes is erroneous, that its current policy was adopted in violation of the Administrative Procedures Act, that the policy is contrary to decisions by the Eighth Circuit and this District Court, and that it violates the Ex Post Facto Clause of the United States Constitution. He asks the Court to declare the current BOP policy invalid and to direct the BOP to transfer him to a CCC for at least the last six months of his sentence.

## II.
## Analysis

A.   Statutory Framework.

Pursuant to 18 U.S.C. § 3621(b), the BOP is authorized to "designate the place of [a federal] prisoner's imprisonment," which may be "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP]...[and] that the [BOP] determines to be appropriate and suitable."  The statute further provides that the BOP "may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another." The statute lists the following factors for the BOP to consider in making an initial housing designation or transfer determination: (1) the resources of the facility, (2) the nature and circumstances of the prisoner's offense, (3) the prisoner's history and characteristics, (4) any relevant statements or recommendations by the sentencing court, and (5) any pertinent policy statements issued by the Sentencing Commission.  There is no contention here that a CCC does not constitute a "place of ... imprisonment" or a "penal or correctional facility."  See Elwood, 386 F.3d at 846 & n.2

(stating that government had conceded that a CCC is a place of imprisonment and a penal or correctional facility).

The relevant provisions of 18 U.S.C. § 3624(c) state:

**Pre-release custody.** – The [BOP] shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

B.   BOP's December 2002 Policy.

For a number of years, the BOP construed its authority under § 3621(b) and § 3624(c) as authorizing the regular transfer of inmates from prison to community confinement for the last six months of their sentences, even if the six-month period exceeded ten percent of their sentences. See BOP Program Statement 7310.04 ¶ 5.[2]

On December 13, 2002, the Office of Legal Counsel for the United States Department of Justice (OLC) issued a memorandum opinion finding that this practice was unlawful. OLC Memo. Op. for Dep. Atty. Gen., Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment, 2002 WL 31940146 (Dec. 13, 2002). The opinion stated that, when a prisoner has received a sentence of imprisonment, the BOP's authority to transfer him to a non-prison site is limited to a period "not to exceed six months, of the last 10 percentum

---

[2]This program statement stated:

> A CCC meets the definition of a "penal or correctional facility." Therefore, the Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the "last ten percentum of the term," or more than six months, if appropriate.

4

of the term to be served," pursuant to § 3624(c)'s language. The United States Attorney General adopted the OLC's position[3] and, in response, the BOP altered its policies regarding pre-release community confinement designation, limiting the duration to the lesser of six months or ten percent of a prisoner's sentence. See BOP Memo. for Chief Executive Officers (Dec. 20, 2002)[4] (hereinafter referred to as the "December 2002 Policy").

The BOP's December 2002 Policy generated a multitude of prisoner petitions and, consequently, a number of conflicting District Court decisions on its validity. The issue was settled in the Eighth Circuit by the ruling in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004), which reversed a decision arising out of this District and concluded that the December 2002 Policy was based on an erroneous interpretation of § 3621(b) and § 3624(c). In Elwood, the Eighth Circuit held that the correct interpretation of the statutes was as follows. First, § 3621(b) gives the BOP discretion to transfer prisoners to CCCs at any time during their incarceration. Second, § 3624(c) bestows an affirmative duty on the BOP to ensure that each prisoner spends a reasonable part of the last ten percent of his sentence under pre-release conditions that will facilitate a smooth re-entry into the community. Third, the BOP's duty under § 3624(c) is qualified in that placement under pre-release conditions is mandated only "to the extent practicable," and the duty "shall not extend beyond the last six months of the prisoner's sentence." Elwood, 386 F.3d at 846-47.

The Eighth Circuit further stated:

---

[3] This was embodied in a memorandum dated December 16, 2002, from Larry D. Thompson, Deputy Attorney General, to Kathleen Hawk Sawyer, who was then BOP Director. The memorandum can be accessed at www.usdoj.gov/dag/readingroom/imprisonment.htm.

[4] This can be accessed at www.bop.gov/policy/ogcpg/ogcguidance_memo_red.pdf.

> We emphasize ... that 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Likewise, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

Id. at 847.

> Upon remand, the District Court entered an order directing that:
>
> Pursuant to the Eighth Circuit's opinion ..., Respondent shall: (a) consider, in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable.[fn.3: This duty shall not extend beyond the last six months of Petitioner's sentence.]

Elwood v. Jeter, No. 2:03cv00202, docket entry #39 at 3-4 (E.D. Ark. Jan. 3, 2005). The petitioner appealed from this order, and the Eighth Circuit summarily affirmed the decision of the District Court. Elwood v. Jeter, No. 05-1338 (8th Cir. Feb. 9. 2005) (docket entry #42 in E.D. Ark. No. 2:03cv00202).

    C.    <u>BOP's February 2005 Rule</u>.

In response to rulings by various district courts invalidating the December 2002 Policy, the BOP proposed a new rule under the Administrative Procedure Act's notice-and-comment procedure that purported to remedy the infirmities found by those courts. Community Confinement, Proposed Rule, 69 Fed. Reg. 51213 (Aug. 18, 2004). Because several courts held that the BOP had discretion under § 3621(b) to place prisoners in

CCCs prior to the last ten percent of the sentence being served, the BOP proposed to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." Id. The BOP explained that "[t]his categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority." Id. (citing Lopez v. Davis, 531 U.S. 230, 243-44 (2001)). The proposed rule became effective February 14, 2005. Community Confinement, Final Rule, 70 Fed. Reg. 1659 (Jan. 10, 2005). As codified, the rule provides as follows:

> § 570.20.  What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> § 570.21.  When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20-570.21 (2005) (hereinafter the "February 2005 Rule").

Like the December 2002 Policy that the Eighth Circuit held to be invalid in Elwood, the February 2005 Rule limits placement in a CCC to the last ten percent of the prison sentence being served, not to exceed six months, the only exception being when a specific BOP program allows a greater period of community confinement pursuant to separate statutory authority. Also, like the December 2002 Policy, the BOP's adoption of the February 2005 Rule has spawned numerous lawsuits. Several courts, including all of the judges in this District to have considered the issue, have held that the rule is invalid, concluding that the legislative history of § 3621(b) *requires* the BOP to consider the factors set forth in the statute before arriving at a determination regarding the appropriate facility for a given inmate, and that the rule fails to consider these factors with respect to individual placement of inmates in a CCC. Clayton v. Sanders, No. 2:05cv00181-SWW (E.D. Ark. Sept. 27, 2005); Banks v. Sanders, No. 2:05cv00161-JLH (E.D. Ark. Sept. 23, 2005); Rabbitt v. Sanders, No. 2:05cv00125-WRW (E.D. Ark. Sept. 23, 2005); Fults v. Sanders, No. 2:05cv00091-GH (E.D. Ark. July 26, 2005); Wiles v. Sanders, No. 2:05cv00220-JFF (E.D. Ark. Oct. 4, 2005); Oatsvall v. Sanders, No. 2:05cv00078-JTR (E.D. Ark. Sept. 16, 2005); Smith v. Sanders, No. 2:05cv00243-HDY, 2005 WL 2875064 (E.D. Ark. Oct. 27, 2005); Jones v. Sanders, No. 2:05cv00047-HLJ (E.D. Ark. June 7, 2005). Accord Baker v. Willingham, No. 3:04cv1923 (PCD), 2005 WL 2276040, *4 (D. Conn. Sept. 19, 2005) (granting writ and finding that "[i]n effect ... the February 2005 Rule is identical to the December 2002 Policy, as the BOP continues to refuse to consider inmates for CCC placement prior to their ten percent date"); United States v. Paige, 369 F. Supp. 2d 1257, 1262-63 (D. Mont. 2005); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 373-76 (E.D.N.Y.

2005); contra Moss v. Apker, 376 F. Supp. 2d 416, 424-25 (S.D.N.Y. 2005) (concluding that February 2005 Rule represents "a reasonable interpretation of § 3621(b)" and "a lawful exercise of the BOP's discretion under § 3621(b)"); Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548, 551-52 (E.D.N.Y. 2005) (finding that BOP is "authorized to create categorical rules even where a statute requires individualized determinations").

The rationale adopted by the judges in this District in concluding that the BOP's interpretation is erroneous was set forth in Fults v. Sanders, supra, as follows:

> This court does not doubt the BOP, in implementing the statutes governing placement of inmates, can "rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez v. Davis, 531 U.S. 230, 244 (2001).  In Lopez, the Court upheld a BOP regulation excluding offenders who had possessed a firearm during their offense from participating in the early release program established under 18 U.S.C. § 3621(e)(2)(B). "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceed[ing].... The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision[.]'" Id.
>
> As a District Court in the Eastern District of New York has observed, however,
>
>> [h]ere, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in Lopez, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence.  While BOP has the authority to clarify the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.
>> ...

> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in Lopez, the February 2005 Rule in no way furthers or interprets these factors.
>
> Pimentel v. Gonzalez, [367 F. Supp. 2d at 374-75]. The court [in Pimentel] further found the legislative history for § 3621(b) "calls on the agency to consider" the factors set forth in the statute and concluded that the "February 2005 Rule fails because it in no way relates to or considers these factors with regard to transfer to a CCC." This court agrees. While the BOP labeled the rule a "categorical exercise of discretion" it did not exercise its discretion at all. It merely re-packaged the December 2002 blanket rule that was rejected in Elwood.

Fults, supra, docket entry #6 at 6-8 (footnote omitted).[5]

The rationale employed in Fults and the other decisions from this District is the same rationale used by the other cited decisions outside this District as a basis for invalidating the February 2005 Rule. This Magistrate Judge finds that the Fults decision is well-reasoned and, therefore, follows the lead of the other judges in this District in adopting its rationale and result. Accordingly, the Magistrate Judge finds that the BOP's February 2005 Rule is invalid. As stated in Fults, the legislative history of § 3621(b) requires that the BOP consider the factors set forth in the statute before determining the appropriate facility for a given inmate, but the February 2005 Rule fails to consider these factors with respect to placement of inmates in a CCC.

The Court, therefore, should grant Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus and should direct Respondent to (a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence, or the remainder of his sentence if less than six months remain to be served, in accordance with

---

[5] The BOP has appealed this decision to the Eighth Circuit Court of Appeals, and the case is set for oral argument in December. Fults v. Sanders, 8th Cir. No. 05-3490.

the factors taken into account by the BOP prior to its adoption of the December 2002 Policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

The Court cannot, however, order the BOP to transfer Petitioner to a CCC at any particular time. Nothing in the applicable statutes, Elwood, or the other District Court cases invalidating the February 2005 Rule entitles any prisoner to six months of placement in a CCC. Instead, the proper remedy is consideration of such placement by the BOP in accordance with this opinion. See Elwood, 386 F.3d at 847; Paige, 369 F. Supp. 2d at 1263; Knish v. Stine, 347 F. Supp. 2d 682, 688 (D. Minn. 2004).

### III.
### Other Arguments

Respondent contends that Petitioner has failed to state a claim upon which relief could be granted because he "has no constitutional right to be housed in any particular type of facility, much less a half-way house." A § 2241 petition can be predicated on a violation of either the Constitution or federal law. 28 U.S.C. § 2241(c)(3). In Elwood, the Eighth Circuit reversed the denial of the petitioner's § 2241 petition challenging the BOP's December 2002 Policy regarding CCC placement, not because of a violation of the Constitution, but on the basis that the policy was an erroneous interpretation of 18 U.S.C. § 3621(b) and § 3624(c). Elwood, 386 F.3d at 845-47. Petitioner's claim here is indistinguishable from that allowed to proceed in Elwood.

Because the Court has determined that Petitioner is entitled to relief as set forth above, it is not necessary to address his alternative claims for relief.

IV.
Conclusion

THEREFORE, Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus should be GRANTED and Respondent should be directed to: (a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the last six months of his sentence, or the remainder of his sentence if less than six months remain to be served, in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

Petitioner's motion for expedited ruling (docket entry #5) should also be GRANTED.[6]

DATED this 10th day of November, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] Petitioner's motion states that he could be eligible for CCC placement as early as October 2005. While this is at odds with the assertions in his petition, his case still has been given expedited consideration. It should also be noted that Petitioner has filed two pleadings addressing arguments not even raised by Respondent, which has frustrated this Court's efforts to expedite the rulings in his case and others.